**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF NORTH CAROLINA**
**EASTERN DIVISION**

| | |
|---|---|
| SHENNA COLES, as a Representative of the estate of Sheila Washington, | Civil Action No. ___4:24-cv-158___ |
| *Plaintiff*, | **JURY DEMAND** |
| v. | |
| KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; PHILIPS HOLDING USA, INC; and PHILIPS RS NORTH AMERICA, | |
| *Defendants.* | |

**COMPLAINT**

Shenna Coles, as a Representative of the estate of Sheila Washington ("Plaintiff"), by and through her undersigned counsel, hereby submits the following Complaint and Demand for Jury Trial against Defendants Koninklijke Philips N.V. ("Philips NV"), Philips North America LLC ("Philips NA"), Philips Holding USA, Inc. ("PHUSA"), and Philips RS North America LLC ("Philips RS") (collectively referred to as "Philips" or the "Defendants") and alleges the following upon personal knowledge and belief, and

investigation of counsel:

**INTRODUCTION**

1. Philips researches, develops, designs, manufactures, sells, distributes, and markets a variety of Bilevel Positive Airway Pressure ("BiPAP") and Continuous Positive Airway Pressure ("CPAP") devices, which are used to treat obstructive sleep apnea ("OSA"), and a variety of

mechanical ventilators ("ventilators"), which are used to treat respiratory failure.

2. Plaintiff was prescribed, purchased, and used on a daily basis, a Philips Trilogy machine.

3. As a direct and proximate result of Philips's wrongful conduct in researching, developing, designing, manufacturing, selling, distributing, and marketing the subject devices, and in failing to warn consumers and the medical community regarding their latent and foreseeable risks, Plaintiff suffered second degree burns on her face, which required substantial medical treatment and which will require such treatment in the future, and also lost her home to a fire which was created by Philip's defective device.

## **THE PARTIES**

### **PLAINTIFF**

4. At all relevant times, including the times Plaintiff was prescribed, purchased, and used the subject device, Plaintiff has been a United States citizen and resident of Washington, North Carolina.

5. Plaintiff was prescribed the subject device for the treatment of sleep apnea and purchased said device in Washington, North Carolina.

6. At all relevant times, Plaintiff used the subject device for the purpose for which it was researched, developed, designed, manufactured, sold, distributed, marketed and otherwise intended for.

7. As a result of using the subject device, Plaintiff was exposed to toxic and harmful substances and suffered severe personal injuries including second degree burns to her face that would not have occurred but for the defective nature of the subject device and Philips's failure to warn Plaintiff or her physicians of the serious health risks associated with use of the subject device.

### **DEFENDANTS**

8. Philips NV is a public limited liability company established under the laws of the Kingdom of the Netherlands, having its principal executive offices at Philips Center, Amstelplein 2, 1096 BC Amsterdam, Netherlands.

9. Philips NV researches, develops designs, manufactures, sells, distributes, and markets BiPAP/CPAP and ventilator devices, including the subject device.

10. Philips NV researched, developed, designed, manufactured, sold, distributed, and marketed the subject device.

11. Philips NV is the parent company of Philips NA and Philips RS.

12. Philips NA is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141.

13. Philips NA is a wholly owned subsidiary of Philips NV.

14. Upon information and belief, Philips NA manages the operations of Philips NV's lines of business in North America, including Philips RS

15. Philips NA researches, develops, designs, manufactures, sells, distributes, and markets BiPAP/ CPAP and ventilator devices, including the subject device.

16. Philips NA researched, developed, designed, manufactured, sold, distributed, and marketed the subject device.

17. Philips Holding is a Delaware corporation with its principle place of business located at 22 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141

18. Philips Holding is a holding company and the sole member of Phillips NA.

19. Philips Holding researches, develops, designs, manufactures, sells, distributes, and markets BiPAP/ CPAP and ventilator devices, including the subject device.

20. Philips Holding researched, developed, designed, manufactured, sold, distributed, and

marketed the subject device.

21. Philips RS is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburg, Pennsylvania 15206.

22. Prior to December 2020, Philips RS operated under the name Respironics, Inc. ("Respironics"), which Philips NV acquired in 2008.

23. Philips RS researches, develops, designs, manufactures, sells, distributes, and markets BiPAP/ CPAP and ventilator devices, including the subject device.

24. Philips RS researched, developed, designed, manufactured, sold, distributed, and marketed the subject device.

25. At all relevant times, Defendants were and are in the business of researching, developing, designing, manufacturing, selling, distributing, and marketing devices for the treatment of OSA and respiratory failure, including the subject device.

26. At all relevant times, Defendants acted in concert in researching, developing, designing, manufacturing, selling, distributing, and marketing devices for the treatment of sleep apnea and respiratory failure, including the recalled devices and subject devices.

27. At all relevant times, Defendants combined their property and labor in a joint undertaking for profit in the researching, developing, designing, manufacturing, selling, distributing, and marketing of device for the treatment of sleep apnea and respiratory failure, including the subject device, with rights of mutual control over each other.

28. At all relevant times, Defendants operated as a single enterprise, equally controlled each other's business affairs, commingled their assets and funds, disregarded corporate formalities, and used each other as corporate shields.

29. At all relevant times, Defendants were mere alter egos or instrumentalities of each other,

and there is such a unity of interest and ownership between Defendants that the separate personalities of their respective entities ceased to exist.

30. At all relevant times, Defendants acted in all respects as agents or apparent agents of one another and, as such, are jointly liable to Plaintiff.

## JURISDICTION AND VENUE

31. This Court has diversity subject matter jurisdiction under 28 U.S.C. §1332, because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00.

32. Specifically, as alleged herein, Plaintiff is a citizen of North Carolina and Defendants are citizens of the Kingdom of the Netherlands and the States of Delaware, Massachusetts, and Pennsylvania.

33. Additionally, the damages Plaintiff sustained as a result of Defendants' researching, developing, designing, manufacturing, selling, distributing, and marketing of the subject device, and failure to warn of their serious and life-threatening risks, substantially exceed $75,000.00 and include physical and emotional damages.

34. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) and (c) and 18 U.S.C. § 1965, because Defendants transact business in this District, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and because the Plaintiff resides in this District.

35. The Court has personal jurisdiction over the Defendants because Defendants conduct substantial business in this District, and the events giving rise to Plaintiff's claims arise out of and relate to Defendants' contacts with this District

## FACTUAL ALLEGATIONS

### A. Background on Positive Airway Pressure Devices and Mechanical Ventilators

36. BiPAP and CPAP devices, as well as mechanical ventilators, are medical devices designed to help patients breathe.

37. BiPAP and CPAP devices are types of positive airway pressure ("PAP") devices typically used to treat sleep apnea.

38. Sleep apnea is a breathing disorder characterized by repeating episodes of breathing cessation due to upper airway collapse during sleep. The episodes of breathing cessation are called "apneas," which can result in snoring, daytime sleepiness, and fatigue, but also increased risk of severe cardiovascular conditions, such as coronary artery disease, congestive heart failure, stroke, and sudden cardiac death.

39. CPAP devices work by delivering a continuous stream of filtered and pressurized air into a patient's airway, using a motor to draw room-temperature air through a filter and force the filtered air into a flexible tube attached to a mask covering the patient's nose or mouth. The continuous stream of filtered and pressurized air holds the airway open and prevents it from collapsing during sleep.

40. BiPAP devices are a common alternative to CPAP devices, and use two different pressures to hold the airway open during inhalation and exhalation.

41. Patients who use PAP devices to treat sleep apnea typically use them every night while sleeping.

42. Ventilators are medical devices that take on the work of breathing when a patient suffers respiratory failure or is unable to breathe enough on their own, such as during surgery.

43. Respiratory failure is a serious condition that develops when the lungs cannot get enough oxygen into the blood resulting in a buildup of carbon dioxide that can damage tissues and organs

and further impair oxygenation of the blood.

44. Many underlying conditions can cause respiratory failure, such as physical trauma, pneumonia, sepsis, drug overdose, or COVID-19, and if not treated appropriately, respiratory failure can lead to death.

45. Ventilators work by applying positive pressure to the airway through an endotracheal tube, tracheostomy tube, or breathing mask, and blow air into the lungs. Patients usually exhale the air on their own, but sometimes the ventilator does it for them.

46. Some patients require ventilators for short periods of time, such as during surgery and under anesthesia, while other patients, such as Plaintiff, must use ventilators for longer periods of time or even the rest of their lives.

**B. Philips Role in the OSA Treatment Industry.**

47. Philips is a major manufacturer of PAP devices and ventilators, among other products, and earns substantial revenue from the research, development, design, manufacture, sale, distribution, and marketing of these devices.

48. According to Philips's 2020 Annual Report, "Sleep & Respiratory Care" constituted approximately 49% of Philips's total sales in its Connected Care line of business, which accounted for 28% of Philips's overall sales of about €19.535 billion ($23.735 billion).[1] [2]

49. Determined to develop the quietest devices on the market with the lowest possible decibel rating, device manufacturers, such as Philips, filled PAP and ventilator devices with sound abating foam to reduce the noise emitted from the motor and airflow.

50. Since 2009, Philips has incorporated PE-PUR foam in its PAP devices and ventilators,

---

[1] U.S. dollar equivalence is based on the average EUR/USD exchange rate on January 25, 2021 when Philips announced its 2020 Fourth Quarter and Annual Results (1 EUR = 1.215 USD).

[2] PHILIPS, ANNUAL REPORT 2020 (2021).

including the subject devices, for sound abatement purposes.

51. However, PE-PUR foam can degrade into particles and off-gas certain flammable chemicals.

52. This process PE-PUR foam degradation is caused or exacerbated by environmental factors, such as heat, humidity, or moisture.

53. The particulates and off-gas chemicals resulting from the degradation of PE-PUR foam are flammable, toxic, and cause both short-term and long-term health risks.

**C. Plaintiff was severely burned from use of Defendants' Trilogy Machine**.

54. On November 11, 2021 Plaintiff used Defendant's Trilogy Machine ("subject device") before bed, as prescribed and directed, and therefore, in the foreseeable manner normally intended, recommended, promoted, and marketed by Philips. Thereafter, she awoke from the Trilogy Machine set ablaze on her face which would then go on to set her home aflame.

55. Plaintiff suffered second degree burns on her face and lost her home as a result of the Trilogy Machine catching fire.

56. Plaintiff's burns, resulting treatment, and need for future medical care and treatment would not have occurred but for the defective nature of the subject device and Philips's wrongful conduct.

57. Due to the defective nature of the subject device and Philips's wrongful conduct, Plaintiff has suffered severe injuries and permanent limitations, has undergone significant treatment, and will be required to undergo significant treatment in the future.

## CAUSES OF ACTION

### COUNT I
### STRICT LIABILITY-FAILURE TO WARN

58. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

59. At all relevant times, Philips engaged in the business of researching, developing, designing, manufacturing, selling, distributing, and marketing the subject device, which is defective and unreasonable dangerous to consumers, including Plaintiff, because it does not contain adequate warnings or instructions concerning dangerous characteristics.

60. At the time Philips researched, developed, designed, manufactured, sold, distributed, marketed, and otherwise released the subject device into the stream of commerce, Philips knew or should have known that the subject device presented an unreasonable danger to users when used as intended and in a reasonably anticipated manner.

61. Specifically, at all relevant times, Philips knew, or should have known, that the subject devices, pose a significant health risk in that the PE-PUR sound abatement foam incorporated in the devices may off-gas certain flammable chemicals, which a person may be exposed to resulting in significant injuries.

62. At all relevant times, Philips knew, or should have known, that the subject devices created significant risks of serious bodily harm to consumers and Plaintiff, as alleged herein, and Defendants failed to adequately warn reasonably foreseeable users and their health care providers, such as Plaintiff, her physician, and health care providers, of the inherent risks of toxic exposure resulting in significant and life-threatening injuries, such as severe burns, associated with use of the subject devices.

63. At all relevant times, Philips had a duty to properly research, develop, design, manufacture, sell, distribute, and market the subject devices, which included providing proper warnings, and taking such steps as necessary to ensure the subject devices did not cause users, like Plaintiff, to suffer from unreasonable and dangerous risks.

64. Philips, as a researcher, developer, designer, manufacturer, seller, distributor, and marketer

of medical devices, is held to the knowledge of an expert in the field, and had a continuing duty to warn users, including Plaintiff, of the risks associated with using the subject devices.

65. Philips had a duty to warn Plaintiff and other consumers of the risks of harm resulting from exposure to degraded PE-PUR foam, its particulates and flammable chemical emissions as a result of using the subject devices.

66. These risks are of such a latent nature that health care providers and users could not have recognized the potential harm without proper warnings provided by Philips.

67. At all relevant times, Philips could have provided proper warnings or instructions regarding the full and complete risks of the subject devices, because Philips knew, or should have known, of the unreasonable risks of harm associated with the use of, or exposure to, the subject devices.

68. At all relevant times, Philips failed and deliberately refused to investigate, study, test, promote the safety, or minimize the dangers to those would foreseeably use or be harmed by the subject devices, including Plaintiff.

69. Plaintiff used and was exposed to the subject devices without knowledge of their dangerous characteristics.

70. Despite Philips's obligation to unilaterally strengthen the warnings, Philips instead actively concealed knowledge of the true risks concerning use of the subject devices and degradation of the PE-PUR foam incorporated in the devices.

71. At all relevant times, Plaintiff used or was exposed to the subject device while using it for its intended or reasonably foreseeable purpose, without knowledge of its dangerous characteristics.

72. Plaintiff could not have reasonably discovered the defects and risks associated with the subject device prior to or at the time of using it, and relied upon the skill, superior knowledge, and judgment of Philips to know about and disclose those serious health risks associated with using

the subject device.

73. Philips knew or should have known that failing to disseminate warnings or instructions regarding the risk of exposure to degraded PE-PUR foam or the dangers of toxic exposure causing severe and life-threatening injuries, including off-gassing flammable chemicals, rendered the subject devices dangerous and unfit for their ordinary, intended, and reasonably foreseeable use.

74. The information Philips did provide or communicate entirely failed to contain relevant or adequate warnings or precautions that would have enabled consumers, such as Plaintiff, to use the subject devices safely.

75. Instead, Philips failed to disseminate any information regarding the true and complete risks and otherwise disseminated information that was inaccurate, incomplete, false, and misleading, and which failed to communicate accurately or adequately the risk of injury with use of the subject devices.

76. Philips knew or should have known of the unreasonable risks from use of the subject devices, and downplayed or otherwise suppressed any information or research about the risks and dangers of the subject devices.

77. Philips is liable to Plaintiff for injuries caused by its negligent or willful failure to provide adequate warnings, instructions, or relevant information and data regarding the risks associated with using the subject devices.

78. Had Philips provided adequate warnings, instructions, or relevant information, and disseminated the risks associated with the subject devices, Plaintiff could have obtained or used alternative devices for the treatment of sleep apnea and avoided the risk of suffering from severe burns.

79. As a direct and proximate result of Philips placing the defective subject devices into the

stream of commerce, Plaintiff was injured and sustained damages and pecuniary loss in a sum exceeding the jurisdictional minimum of this Court in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and such other relief as this Court deems just and proper.

**COUNT II**
**STRICT LIABILITY-DESIGN DEFECT**

80. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

81. The subject device is inherently dangerous and defective, unfit and unsafe for their intended uses and reasonably foreseeable uses, and do not meet or perform to the expectations of patients and their health care providers.

82. The design of the subject device, including, but not limited to the design incorporating the use of PE-PUR foam and the placement of this foam within the air pathway of the subject devices, was unreasonably dangerous and defective, resulting in the ingestion and inhalation of degraded PE-PUR foam particulates and exposure to flammable chemical emissions.

83. The ingestion, inhalation, and exposure to these particulates and flammable chemical emissions is known to cause burns, headaches, irritation, inflammation, respiratory issues, and toxic and carcinogenic effects, including the development of cancer.

84. The subject device used by Plaintiff was defective in design, in that the risk of harm exceeded any claimed benefits.

85. The subject devices did not perform as an ordinary consumer would expect.

86. The inherent risks, hazards, and dangers associated with the design of the subject devices, incorporating PE-PUR foam in such a manner that exposes the user, such as Plaintiff, to the

exposure, ingestion or inhalation of degraded PE-PUR foam particulates or flammable chemical emissions rendered the subject devices unreasonably dangerous.

87. Accordingly, the design of the subject devices rendered them not reasonably fit, suitable, or safe for their intended purpose.

88. Neither Plaintiff, nor her physicians or healthcare providers could have, by the exercise of reasonable care, discovered the subject devices' defective conditions or perceived their unreasonable dangers prior to her using the subject devices.

89. There are other similar BIPAP devices that incorporate PE-PUR foam for sound abatement purposes, but do not result in the ingestion or inhalation of toxic foam particulates or flammable chemical emissions.

90. Furthermore, there are other similar BIPAP devices that do not incorporate PEPUR foam that is subject to degradation or result in exposure to the user of toxic particulates, flammable chemical emissions, or other harmful compounds.

91. Safer, alternative devices from other manufacturers were available that did not suffer from the defects as set forth herein and that did not have an unreasonable risk of harm as with the subject devices and their unsafe incorporation of PE-PUR foam.

92. As a result of the foregoing design defects, Philips created risks to the health and safety of its users, including Plaintiff, that were far more significant and devastating than the risks posed by other products and procedures available to treat the corresponding medical conditions, and which far outweigh the utility of the subject device.

93. The risk-benefit profile of the subject device is unreasonable, and they should have had stronger and clearer warnings, or should not have been sold in the market.

94. Philips intentionally or recklessly designed the subject devices with wanton and willful

disregard for the rights and health of Plaintiff and others, and with malice, placing their economic interests above the health and safety of the Plaintiff and others.

95. As a proximate result of Philips's design of the subject device, Plaintiff was injured and sustained damages and pecuniary loss in a sum exceeding the jurisdictional minimum of this Court in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and such other relief as this Court deems just and proper.

## COUNT III
## NEGLIGENT FAILURE TO WARN

96. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

97. Philips owed Plaintiff a duty of care to warn of any risks associated with the subject devices.

98. Philips knew or should have known of the true risks associated with the subject devices, but failed to warn Plaintiff, her physician, and health care providers.

99. Philips's negligent breach of their duty to warn caused Plaintiff to sustain serious and permanent injuries, including second degree burns on her face.

100. Plaintiff would not have purchased, chosen, or paid for the subject devices if she knew of the defects and the risks associated with the use of the subject devices.

101. As a proximate result of the Philips's negligent failure to warn of the risks associated with use of the subject devices, Plaintiff was injured and sustained damages and pecuniary loss in a sum exceeding the jurisdictional minimum of this Court in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for

compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and such other relief as this Court deems just and proper.

## COUNT IV
## NEGLIGENT DESIGN DEFECT

102. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

103. At all relevant times, Philips researched, developed, designed, manufactured, sold, distributed, and promoted the subject device in the regular course of business.

104. The subject devices were designed and intended to be used for the treatment of OSA.

105. Philips knew or by the exercise of reasonable care, should have known, that use of the subject device, as a result of their defective design, was dangerous, harmful and injurious when used by Plaintiff in a reasonably foreseeable manner.

106. Philips had a duty to exercise reasonable care in designing the subject devices in such a manner that they were not dangerous, harmful, injurious or pose an unreasonable risk to consumers, such as Plaintiff.

107. Philips breached its duty by failing to use reasonable care in the design of the subject devices by designing the devices such that PE-PUR foam incorporated in the devices could produce highly harmful particulates and flammable chemical emissions that enter the devices' air pathway, which a user, such as Plaintiff, may then by exposed to, ingest or inhale.

108. The subject devices contained and produced toxic particulates and flammable chemical emission from degraded PE-PUR foam that can lead to short-term and long-term health risks, including, burns, headaches, irritation of the skin, eye, and respiratory tract; respiratory distress; asthma; inflammation; nausea; vomiting; and cancer, all of which Philips knew or should have known could result from use of the subject devices, thereby rendering the devices not reasonably

fit, suitable, or safe for their intended purpose.

109. Philips breached its duty when it failed to use commercially feasible alternative designs to minimize the above-mentioned harms, including, but not limited to designing products that prevented exposure to particulates and flammable chemical emissions from PE-PUR foam.

110. The dangers of the subject devices outweighed the benefits and rendered the device unreasonably dangerous.

111. There are other similar devices that do not incorporate PE-PUR foam in such a manner that is subject to degradation and exposure to flammable chemicals.

112. There are other similar devices that incorporate PE-PUR foam in such a manner that the user does not ingest or inhale degraded foam particulates or face exposure to flammable chemical emission.

113. Safer, alternative devices from other manufactures were available that did not have an unreasonable risk of harm as with the subject device.

114. The risk-benefit profile of the subject device was unreasonable, and should have had stronger and clearer warnings, or should not have been sold in the market.

115. As a proximate result of the Philips's negligent design of the subject device, Plaintiff was injured and sustained damages and pecuniary loss in a sum exceeding the jurisdictional minimum of this Court in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgement against Defendants jointly and severally for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and such other relief as this Court deems just and proper.

## COUNT V
## BREACH OF EXPRESS WARRANTY

116. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this

Complaint with the same force and effect as if fully set forth herein.

117. At all relevant times, Philips intended that the subject devices be used in the manner that Plaintiff in fact used them, and expressly warranted that each was safe and fit for use by Plaintiff, that they were of merchantable quality, that their risks were minimal and comparable to other comparable or substantially similar devices, and that they were adequately tested and fit for their intended use.

118. At all relevant times, Philips was aware that consumers, including Plaintiff, would use the subject devices, and as a result are in privity with Philips.

119. The subject devices were expected to reach and did in fact reach Plaintiff without substantial change in the condition in which they were manufactured and sold by Philips.

120. Philips warranted the subject devices "shall be free from defects of workmanship and materials and will perform in accordance with the product specifications for a period of two (2) years from the date of sale."

121. Philips breached this express warranty upon the sale and distribution of the subject devices.

122. At the point of sale, the subject devices while appearing normal—contained immediate latent defects as set forth herein, rendering them unsuitable and unsafe for personal use by humans.

123. In reliance upon Philips's express warranty, Plaintiff used the subject devices as prescribed and directed, and therefore, in the foreseeable manner normally intended, recommended, promoted, and marketed by Philips.

124. At the time of making such express warranties, Philips knew or should have known that the subject devices were not safe and had numerous defects, many of which Philips did not accurately warn about, thus making the subject devices unreasonably unsafe for their intended

purpose.

125. Members of the medical community, including physicians and other health care providers, as well as Plaintiff, his physicians, and health care providers, relied upon the representations and warranties of Philips in connection with the use, recommendation, description, or prescribing of the subject devices.

126. Had Plaintiff known the subject devices were unsafe for use, she would not have purchased or used them.

127. Plaintiff reasonably expected, at the time of purchase, that the subject devices were safe for their ordinary and intended use.

128. Philips breached its express warranties to Plaintiff in that the subject device was not of merchantable quality, safe, and fit for their intended uses, nor were they adequately tested.

129. Philips breached its express warranties to Plaintiff in violation of applicable state statutes and common law, by manufacturing, marketing, and selling the subject devices to Plaintiff and causing damages as will be established at trial.

130. As a proximate result of the Philips's breach of express warranty, Plaintiff was injured and sustained damages and pecuniary loss in a sum exceeding the jurisdictional minimum of this Court in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgement against Defendants jointly and severally for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and such other relief as this Court deems just and proper.

**COUNT VI**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

131. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

132. Philips knew of the intended use of the subject devices at the time it researched, developed, designed, manufactured, sold, distributed, and promoted the subject devices for use by Plaintiff, and impliedly warranted the subject devices to be of merchantable quality and safe and fit for their ordinary and intended use.

133. Plaintiff, her physicians, and health care providers were, at all relevant times, in privity with Philips.

134. The subject devices were expected to reach and did in fact reach consumers, including Plaintiff, without substantial change in their condition in which they were manufactured and sold by Philips.

135. Philips impliedly warranted that the subject devices were merchantable pursuant to UCC § 2-314 and suitable for the ordinary purpose for which they were intended to be used.

136. Philips's representations and implied warranties were false, misleading, and inaccurate because the subject devices were defective, and not of merchantable quality.

137. Philips breached the implied warranty of merchantability in connection with the sale and distribution of the subject devices.

138. At the point of sale, the subject devices, while appearing normal, contained defects as set forth herein, rendering them unsuitable and unsafe for personal use by humans.

139. At the time the subject devices were researched, developed, designed, manufactured, sold, distributed, and promoted by Philips, Philips knew of the use for which they were intended and impliedly warranted the subject devices to be of merchantable quality and safe and fit for such use.

140. Plaintiff reasonably expected, at the time of purchase, that the subject devices were safe for their ordinary and intended use.

141. Had Plaintiff known the subject devices were unsafe for use and not of merchantable

quality, she would not have purchased or used them.

142. As a proximate result of the Philips's breach of implied warranty, Plaintiff was injured and sustained damages and pecuniary loss in a sum exceeding the jurisdictional minimum of this Court in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgement against Defendants jointly and severally for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and such other relief as this Court deems just and proper.

## COUNT VII
## GENERAL NEGLIGENCE

143. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

144. At all relevant times, Philips engaged in the business of researching, developing, designing, manufacturing, selling, distributing, and marketing the subject device, which is defective and unreasonable dangerous to consumers, including Plaintiff, because it does not contain adequate warnings or instructions concerning dangerous characteristics nor take any other necessary steps to mitigate the dangers their devices presented.

145. At the time Philips researched, developed, designed, manufactured, sold, distributed, marketed, and otherwise released the subject device into the stream of commerce, Philips knew or should have known that the subject device presented an unreasonable danger to users when used as intended and in a reasonably anticipated manner.

146. Specifically, at all relevant times, Philips knew, or should have known, that the subject devices, pose a significant health risk in that the PE-PUR sound abatement foam incorporated in the devices may off-gas certain flammable chemicals, which a person may be exposed to resulting in significant injuries.

147. At all relevant times, Philips knew, or should have known, that the subject devices created significant risks of serious bodily harm to consumers and Plaintiff, as alleged herein, and Defendants failed to adequately warn reasonably foreseeable users and their health care providers, such as Plaintiff, her physician, and health care providers, of the inherent risks of toxic exposure resulting in significant and life-threatening injuries, such as severe burns, associated with use of the subject devices.

148. Thus, Philips failed to use the same amount of care that someone in their situation would ordinarily exercise under the same circumstances then existing.

149. As a result of Philips conduct, Plaintiff was exposed to toxic and harmful substances and suffered severe personal injuries including second degree burns to her face that would not have occurred but for Philips's negligent conduct.

150. As a direct and proximate result of Philips's wrongful conduct in researching, developing, designing, manufacturing, selling, distributing, and marketing the subject devices, and in failing to warn consumers and the medical community regarding their latent and foreseeable risks, Plaintiff suffered second degree burns on her face, which required substantial medical treatment and which will require such treatment in the future, and also lost her home to a fire which was created by Philip's defective device.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees and such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally for damages to which she is entitled by law, as well as all costs of this action, interest and attorneys'

fees, to the full extent of the law, including:

a) Judgment for Plaintiff and against Defendants;

b) Damages to compensate Plaintiff for her injuries, economic losses and pain and suffering;

c) Prejudgment interest at the lawful rate;

d) Plaintiff's reasonable attorneys' fees; and

e) For any other relief as this Court deems appropriate.


## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.


Dated: November 7, 2024

Respectfully submitted,

**POULIN | WILLEY | ANASTOPOULO, LLC**
BY: */s/ Tiffany N. Lawson*
Tiffany N. Lawson (*NC: 56719*)
Paul J. Doolittle (*pro hac vice forthcoming*)
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
tiffany.lawson@poulinwilley.com
paul.doolittle@poulinwilley..com
cmad@poulinwilley.com
**ATTORNEY FOR PLAINTIFF**